UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:

ANGELO & MAXIE'S LLC,

                Chapter 11
                Case No. 11-11112 (SCC)

           Debtor.
------------------------------------------------------------------------X

**FINAL ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363 AND PROVIDING ADEQUATE
PROTECTION THEREFOR PURSUANT TO 11 U.S.C. §§ 361 AND 362**

Upon consideration of the Motion (the "Motion"), dated March 16, 2011, of Angelo & Maxie's, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), requesting use of cash collateral pursuant to § 363(c)(2) of Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of cash collateral on an emergency basis pending an interim hearing (the Interim Hearing"), scheduling a final hearing (the Final Hearing"), and granting related relief; and an Interim Hearing having been held before this Court on March 22, 2011; and this Court having entered a Stipulation and Order Authorizing Debtor's Interim Use of Cash Collateral Pursuant to § 363 and Providing Adequate Protection Therefor Pursuant to §§ 361 and 362 on March 23, 2011; and a Final Hearing to consider the relief requested in the Motion on a final basis having been held before this Court on April 13, 2011; and due and sufficient notice of the Motion and the Final Hearing having been provided, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being within the guidelines for requests for the use of cash collateral set forth in Local Rule 4001-2; and the relief requested in the Motion being in the best interest of the Debtor, its estate, and creditors; and the Court having reviewed the evidence submitted or adduced and the arguments of counsel made at the

Final Hearing; and the appearances of all interested parties having been noted in the record of the Final Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Final Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[1]**

A. On March 14, 2011 (the "<u>Filing Date</u>"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its assets and is authorized thereby, as a debtor-in-possession, to continue the operation and management of its business.

B. An Official Committee of Unsecured Creditors (the "<u>Committee</u>") has been appointed by the United States Trustee. The Committee has selected the law firm of SilvermanAcampora LLP as its proposed counsel. No trustee or examiner has been appointed heretofore.

C. This Court has jurisdiction over this case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. §157. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Due and sufficient notice of the relief sought in the Motion and of the Interim Hearing and Final Hearing having been provided under the current circumstances of this Chapter 11 case as contemplated by Bankruptcy Code §102(1) and Bankruptcy Rules 2002, 4001 and 9014, and no other or further notice is necessary or required.

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact where appropriate. Fed. R. Bankr. Pro. 7052.

E. For purposes of this Order, "Cash Collateral" shall have the meaning ascribed to such term in section 363(a) of the Bankruptcy Code.

F. Without prejudice to the rights, remedies, and claims of parties in interest contained in Paragraph 24 below, the Debtor acknowledges, admits, and confirms the following:

(a) On or about November 30, 2004, the Debtor executed a note (the "<u>Note</u>") permitting the Debtor to borrow up to an aggregate amount of $4,000,000 and a security agreement (the "<u>Security Agreement</u>") with Capital One, N.A. as successor to North Fork Bank ("<u>Capital One</u>") (the Note, together with the Security Agreement, the "<u>Capital One Loan Agreement</u>").

(b) The obligations under the Capital One Loan Agreement were unconditionally guarantied by each of Karry Goldstein, Reed Goldstein, Alan Kay, Marcia Kay and Jeffrey Lehmann pursuant to that certain Personal Guaranty of All Liability dated November 30, 2004 (the "<u>Personal Guaranty</u>").

(c) The Debtor acknowledges that: (1) the Debtor's repayment obligations under the Capital One Loan Agreement is secured by, *inter alia*, first priority liens and security interests in all of the Debtor's property and assets, wherever located and whether now owned or existing or hereafter acquired (the "<u>Collateral</u>") by virtue of UCC-1 Financing Statements filed on or about September 21, 2007 and September 28, 2009 (the "<u>Pre-Petition Lien</u>"); (2) Capital One had, as of the Filing Date, a perfected security interest in all of the cash proceeds from collection of the Debtor's pre-petition accounts receivable; and (3) as of the Filing Date, the Debtor was indebted to Capital One in the aggregate amount of $1,794,310.76 ("<u>Pre-Petition Capital One Debt</u>").

(d) On March 15, 2011 Capital One, pursuant to its rights under the Personal

Guaranty and the Letter Agreement dated November 30, 2004 between Capital One and Lehmann, applied and/or set off the sum of $600,000 from Jeffrey Lehmann's ("Lehmann") personal account maintained at Capital One to partially satisfy the Pre-Petition Capital One Debt. Lehmann has asserted a right of subrogation in accordance with Bankruptcy Code section 509 and relevant common and statutory law to assert the rights and security interests of Capital One to the Collateral to the extent that $600,000 of his personal funds were used to partially satisfy the obligations owed to Capital One by the Debtor (the "Asserted Lehmann Lien").

(e)     On April 12, 2011, Landry's Seafood House – North Carolina, Inc. acquired by assignment the balance of the Pre-Petition Capital One Debt (the "Secured Lender").

(f)     The liens and security interests of the Secured Lender in the Collateral (the "Secured Lender Liens") are valid, binding, duly perfected first-priority liens in the Collateral and, subject to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents and profits thereof. The Debtor agrees and acknowledges that the Secured Lender Liens and security interests in the Collateral are senior and superior in time and right to all other liens and security interests in the Collateral, *provided, however*, that Secured Lender's duly perfected lien on the funds held in the Debtor's Capital One account number 3054007319 is subject only to the rights of Capital One under that certain Control Agreement, dated April 12, 2011, by and among the Debtor, Capital One and Secured Lender.

(g)     Neither the Pre-Petition Lien nor the Secured Lender Liens are subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law.

(h)     The Pre-Petition Capital One Debt, Pre-Petition Lien and Secured Lender Liens

4

constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms and no objection, offset, defense, or counterclaim of any kind or nature to the Pre-Petition Capital One Debt, Pre-Petition Lien or Secured Lender Liens exists.  The Pre-Petition Capital One Debt, Pre-Petition Lien and Secured Lender Liens, and any amounts previously paid by the Debtor in respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(i) The Debtor does not have, hereby forever releases, and is forever barred from bringing, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Pre-Petition Capital One Debt, Pre-Petition Lien and the Secured Lender Liens, or against any of Capital One, the Secured Lender or their respective predecessors-in-interest, affiliates, subsidiaries, agents, officers, directors, employees, and attorneys.  Notwithstanding any of the foregoing, the Committee shall retain the rights set forth in paragraph 24 hereof.

G. The Secured Lender consents to the Debtor's use of its Cash Collateral solely on the terms and conditions set forth in this Order.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent.

H. Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Order have been negotiated at arms' length and in good faith and are in the best interests of the Debtor, its estate and creditors.

I.	Good cause has been shown for the entry of this Order. The Debtor has an immediate and critical need to use the Cash Collateral in order to continue to operate its business, and effectuate a reorganization thereof. The Debtor's use of Cash Collateral has been deemed sufficient to meet the Debtor's immediate post-petition liquidity needs, subject to the terms of this Order, and all other agreements, documents, notes, or instruments delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Budget.

J.	The ability of the Debtor to have sufficient available sources of working capital to continue its business, effectuate a reorganization of its business, and maximize the value of its assets depends upon the Debtor's use of Cash Collateral. The Debtor has requested that the Secured Lender consent to the use of its Cash Collateral, to be used by the Debtor solely in accordance with the terms of this Order.

K.	Based on the record presented to the Court at the Interim Hearing and at the Final Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion to avoid irreparable harm to the Debtor's estate. The terms of the Debtor's use of the Cash Collateral, as more fully set forth herein, are (i) fair and reasonable, (ii) reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties, (iii) constitute reasonably equivalent value and fair consideration for the Secured Lender's consent thereto, and (iv) are essential and appropriate for the continued operation and management of the Debtor's business and the preservation of its assets. Entry of this Order is in the best interests of the Debtor's estate and all parties in interest in this Chapter 11 case.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion be, and hereby is, GRANTED on a final basis.

2. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry.

3. Effective *nunc pro tunc* as of March 14, 2011 and continuing through and including the occurrence of a Termination Event as defined below (the "Cash Collateral Period"), , which amount shall not exceed more than 10%, in the aggregate, of the amount set forth in the Budget for the applicable portion of the Cash Collateral Period (the "Variance"). the Debtor is authorized to use Cash Collateral subject to the terms of this Order, which collectively constitute adequate protection for that use, in an aggregate amount up to but not in excess of the actual anticipated cash needs of the Debtor during the Cash Collateral Period. The Debtor may use Cash Collateral only as provided in the Budget, subject to the Variance, annexed hereto as **Exhibit "A"** (the "Budget").

4. Unless otherwise agreed to in writing by the Secured Lender, a "Termination Event" shall arise upon the earlier of the occurrence of any of the following:

(a) the date that this Order ceases to be in full force and effect, or upon entry of any order, other than with the consent of the Secured Lender, reversing, amending, supplementing, staying, vacating, or otherwise modifying this Order in any material respect or terminating the use of Cash Collateral by Debtor pursuant to this Order;

(b) termination of the Management Agreement by Debtor or Manager (as defined in the Management Agreement) in accordance with Section 8 of the Management Agreement;

(c) Debtor's material breach of the Management Agreement;

(d) Debtor fails to materially comply with any of the terms or conditions of this Order;

(e) the effective date of a plan of reorganization or plan of liquidation in the Debtor's Chapter 11 case;

(f) the appointment of a trustee or an examiner with expanded powers in the Debtor's Chapter 11 case,

(g) the conversion or dismissal of the Debtor's Chapter 11 case;

(h) the filing of a motion by the Debtor, without the prior written consent of the Secured Lender, seeking authorization to obtain postpetition financing that is senior or *pari passu* to the Adequate Protection Obligations, Pre-Petition Capital One Debt, Pre-Petition Lien or the Secured Lender Liens;

(i) a filing by any party of any motion or application or adversary proceeding challenging the validity, enforceability, perfection, or priority of the liens securing the Pre-Petition Capital One Debt, Pre-Petition Lien or the Secured Lender Liens, or any other cause of action against and/or with respect to such obligations of the Secured Lender (or, if the Debtor supports any such motion, application or adversary proceeding commenced by any third party);

(j) the Debtor shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Obligations, Pre-Petition Capital One Debt, Pre-Petition Lien or the Secured Lender Liens;

(k) the Debtor's failure to satisfy any Adequate Protection Obligations due to the Secured Lender in a timely manner;

(l) any lien or security interest purported to be created under the Capital One Loan Agreement, Pre-Petition Lien or the Secured Lender Liens, shall cease to be, or shall be asserted by the Debtor not to be, a valid and perfected lien on or security interest in any of the applicable Collateral;

(m) the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any of the Debtor's assets;

(n) the approval of a sale of any of the Debtor's assets outside of the ordinary course of business to a buyer other than the Manager or an affiliate of the Manager without the prior written consent of the Secured Lender;

(o) the filing of a Chapter 11 plan which does not provide for the payment in full of the Secured Lender Liens;

(p) the actual aggregate cash disbursements under the Budget exceeds 110% of the amount of aggregate cash disbursements projected in the Budget during the applicable period;

(q) the actual aggregate cash receipts under the Budget is less than 90% of the amount of aggregate cash receipts projected in the Budget during the applicable period;

(r) the Debtor files a motion seeking approval of any "Superpriority Claim" pursuant to section 507(b) of the Bankruptcy Code or any lien in its Chapter 11 case which is *pari passu* with or senior to the Adequate Protection Obligations, or there shall be granted any such pari passu or senior claim or lien in such case, except as provided hereunder; and

(s) (Intentionally deleted).

5. Upon the occurrence of a Termination Event, and subject to providing seven (7) days written notice to counsel for the Debtor, Committee and the U.S. Trustee, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified, without the need of further Court order, as to the Secured Lender to the extent necessary to effectuate the terms and provisions of this Order, including, without limitation, to (i) permit such Secured Lender to exercise all rights and remedies provided for under this Order; (ii) immediately terminate the Debtor's use of Cash Collateral; (iii) terminate the Management Agreement; and (iv) take any other actions or exercise any other rights or remedies permitted under this Order, the Capital One Loan Agreement, or any other applicable agreement or applicable law. The rights and remedies of the Secured Lender specified herein are cumulative and not exclusive of any rights or remedies that the Secured Lender may have under the Capital One Loan Agreement or otherwise.

6. The failure or delay by the Secured Lender to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of the Secured Lender hereunder or otherwise.

7. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (i) any of the rights of the Secured Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Secured Lender to (A) request modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of the Chapter 11 case, conversion of the Chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or appointment of a Chapter 11 trustee or examiner (including with expanded powers), or (C)

propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Lender, or (iii) the rights of the Debtor or the Committee to oppose any requests made in accordance with clauses (i)(A), (B) and (C) above.

8. The Debtor shall prepare and furnish to the Secured Lender, and the Committee, in form and substance reasonably satisfactory to the Secured Lender, a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Budget on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget (the "<u>Budget</u> <u>Reconciliation</u>"). Such Budget Reconciliation shall be provided to the Secured Lender and the Committee so as actually to be received within three (3) business days following the end of each prior week.

9. Upon reasonable notice and at such reasonable times during normal business hours and otherwise as may reasonably be requested, the Debtor shall permit any representatives designated by the Secured Lender to visit and inspect any of its properties, to inspect, copy, and take extracts from their financial and accounting records, and to discuss their affairs, finances, and accounts with their officers, financial advisors, and independent public accountants. Such right to inspect the Debtor's books and records shall include the right of the Secured Lender and its representatives to have reasonable access to all records and files of the Debtor pertaining to the Collateral.

10. In addition to the existing rights and interests of the Secured Lender and for the purpose of adequately protecting the Secured Lender from Collateral Diminution[2], the Secured

---

[2] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Lender's interests in Debtor's property as of the Filing Date by reason of Debtor's use of Cash Collateral, the sale,

Lender is hereby granted a valid and perfected replacement security interest in, and lien upon the Collateral (the "Replacement Lien"), effective and perfected as of the Filing Date and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or other agreements, solely to the extent Collateral Diminution occurs during the Chapter 11 case subject to (i) with respect to use of the Secured Lender's Cash Collateral, (a) prior to a Termination Event the claims of Chapter 11 professionals duly retained and to the extent awarded pursuant to §§ 330 or 331 of the Bankruptcy Code or pursuant to any monthly fee order entered in the Chapter 11 case (the "Professional Claims"), subject to an aggregate cap of $250,000 (the "Pre-Termination Event Cap") less any unapplied retainers and less any amount of unpaid administrative expenses including without limitation claims under Bankruptcy Code section 503(b)(9); or (b) after the occurrence of a Termination Event, an amount not to exceed $75,000 less any unapplied retainers, less any amount of unpaid administrative expenses and less the amount of Professional Claims that has already been applied against the Pre-Termination Event Cap, and (ii) with respect to Lehmann's Cash Collateral, if any, to the extent of any unpaid administrative expenses, including without limitation claims under Bankruptcy Code section 503(b)(9), which exceed $250,000, the Secured Lender shall fund such payments on the effective date of a confirmed Chapter 11 plan filed by or on behalf of the Debtor and to which the Secured Lender consents, provided that Lehmann's subrogated secured claim, if any, shall be reduced dollar for dollar for all such amounts paid by Secured Lender under such confirmed Chapter 11 plan; (iii) United States Trustee fees pursuant to 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717; (iv) the payment of any claim of any

---

lease or use (or other decline in value) of the Collateral, and imposition of the automatic stay under section 362 of the Bankruptcy Code.

subsequently appointed Chapter 7 trustee up to $20,000; and (v) estate causes of action and the proceeds of any recoveries of estate causes of action under §§ 542 through 553 of the Bankruptcy Code (collectively, items (i) - (v) are referred to as the "<u>Carve Out</u>"). Notwithstanding the foregoing, no legal fees or expenses incurred by any of the Chapter 11 professionals for services rendered in challenging, contesting or objecting to any portion of the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens or the claims of the Secured Lender arising thereunder or relating thereto shall be paid from (i) through (iv) as referenced above.

11. In addition to the Replacement Lien, the Debtor shall, commencing April __, 2011, make adequate protection payments to the Secured Lender in an amount equal to the monthly interest due on the outstanding sums due under the Capital One Loan Agreement at the non-default contract rate of interest provided thereunder, *provided however*, that such payments shall accrue and be added to the Secured Lender's claim and paid in cash on the earlier of (x) a Termination Event or (y) under a confirmed plan (the "<u>Adequate Protection Payments</u>", and together with the Replacement Lien, the "<u>Adequate Protection Obligations</u>").

12. Notwithstanding anything contained herein to the contrary, no Cash Collateral may be used directly or indirectly by the Debtor, the Committee, or any other party in this case, or any other person or entity to (a) object, contest, raise any defense to the validity, perfection, priority, extent or enforceability of the Pre-Petition Capital One Debt, Pre-Petition Lien or the Secured Lender Liens, (b) assert or prosecute any claims or defenses against Capital One or the Secured Lender, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Secured Lender's assertion,

enforcement or realization on the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens, Collateral, or Adequate Protection Obligations, (d) seek to modify any of the rights granted to the Secured Lender hereunder without such parties' prior written consent, or (e) obtain liens that are senior to or on parity with the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens or Adequate Protection Obligations, unless all of the Debtor's obligations to the Secured Lender have been paid in full.

13. From and after the Filing Date, all proceeds of Collateral, including, without limitation, all of the Debtor's existing or future cash and Cash Collateral (collectively, "<u>Secured Lender Funds</u>"), shall not, directly or indirectly, be used to pay expenses of the Debtor or to make debt payments or be otherwise disbursed except for (A) those debt payments, expenses and/or disbursements that are expressly permitted under this Order and are consistent with the Budget (as such Budget may be extended, varied, supplemented, or otherwise modified with the consent of the Secured Lender) and (B) compensation and reimbursement of fees and expenses payable pursuant to sections 330 and 331 of the Bankruptcy Code and payable to attorneys, accountants, investment bankers, financial advisors, or other professional persons retained by the Debtor or the Committee and awarded pursuant to an order of this Court, to the extent consistent with this Order and the Budget; *provided, however*, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (B) and shall not affect the right of any party in interest to object to the allowance and payment of any such amounts.

14. Except as otherwise set forth in the Budget, no claims, including administrative claims relating to the fees and expenses of professionals, shall be charged or assessed against or

recovered from the Collateral or attributed to the Secured Lender with respect to its interests in the Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise by, or on behalf of the Debtor, without the prior written consent of the Secured Lender, and no such consent shall be implied from any action, inaction, or acquiescence by the Secured Lender with or without notice to the Secured Lender.

15. The security interests and liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of Capital One and the Secured Lender as of the Filing Date; (ii) shall secure the payment of indebtedness to the Secured Lender in an amount equal to the aggregate Collateral Diminution resulting from the Collateral used or consumed by the Debtor; and (iii) shall be deemed to be perfected without the necessity of any further action by the Secured Lender or the Debtor. Without limitation, therefore, the Secured Lender shall not be required to file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the liens and security interests granted by this Order.

16. Notwithstanding anything to the contrary herein, all liens, claims and obligations asserted by Lehmann shall, for all purposes of this Order, be subordinate in priority and payment to all obligations due and owing the Secured Lender.

17. The Debtor shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged, naming the Secured Lender as loss payee with respect thereto.

18. The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any

portion of the Collateral without the prior written consent of the Secured Lender (and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Lender) and an order of this Court.

19. Except as expressly provided in this Order, the Debtor shall be enjoined and prohibited from at any time during the Chapter 11 case (a) using the Collateral or Secured Lender Funds except pursuant to the terms and conditions of this Order and the Budget, or (b) granting claims or liens in the Collateral or any portion thereof to any other parties pursuant to sections 364(d), 503(b), or 507(b) of the Bankruptcy Code or otherwise.

20. The obligations of the Debtor in respect of the Adequate Protection Obligations shall not be discharged by the entry of an order (i) confirming a Chapter 11 plan in this Chapter 11 case or (ii) converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. Under no circumstances shall any Chapter 11 plan in this Chapter 11 case be confirmed or become effective unless such Chapter 11 plan provides that the Adequate Protection Obligations shall be paid in full in cash and satisfied in the manner provided for in this Order on or before the effective date of such Chapter 11 plan.

21. The provisions of this Order, including the grant of claims and liens to or for the benefit of the Secured Lender, and any actions taken pursuant hereto shall survive the entry of any order converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

22. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of the Secured Lender and the Debtor. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not

affect the validity and enforceability of any lien, priority or benefit, or application of payment authorized hereby with respect to any indebtedness of the Debtor to the Secured Lender.

23. Intentionally deleted.

24. The findings contained in this Order are binding upon the Debtor and all parties in interest including but not limited to any statutory committee appointed in the Chapter 11 case, and any application of Cash Collateral under this Order shall be indefeasible, unless (a) an adversary proceeding challenging the validity, enforceability or priority of the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens or Adequate Protection Obligations as they relate to Collateral is properly commenced no later than forty five (45) days from the date of entry of this Order, and (b) a final order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding. If no such adversary proceeding is properly commenced as of such date, the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens and Adequate Protection Obligations shall constitute allowed claims for all purposes in the Debtor's Chapter 11 case and any subsequent Chapter 7 case, the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens and Adequate Protection Obligations shall be deemed legal, valid, binding, perfected, not subject to subordination and otherwise unavoidable, and the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens and Adequate Protection Obligations shall not be subject to subordination, avoidance, or any other further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, and successor(s) thereto, subject, however, to valuation for purposes of sections 506(a) and (b) and 1129 of the Bankruptcy Code. If any such proceeding is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and

priority of the Pre-Petition Capital One Debt, Pre-Petition Lien, Secured Lender Liens and Adequate Protection Obligations, but only with respect to and to the extent of the objections raised in such adversary proceeding, and all other matters and objections not raised in such adversary proceeding shall be deemed forever waived. Nothing herein shall affect any party's rights with respect to contesting the Lehmann Lien, if any.

25. The Secured Lender reserves its right to hereafter request additional adequate protection and to object to the adequacy of the adequate protection granted herein.

26. The Secured Lender's agreement to the Debtor's use of Cash Collateral is expressly conditioned on the Secured Lender having the absolute right to credit bid in the amount of its secured claim at any sale of the Collateral under the Bankruptcy Code, or otherwise.

27. In the event of a conflict between this Order and any other documents, this Order shall control.

28. This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Bankruptcy Code.

29. The provisions of this Order, the Adequate Protection Obligations, and any and all rights, remedies, privileges, and benefits in favor of the Secured Lender provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(g) and 7062.

30. The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

**SO ORDERED THIS
26th DAY OF APRIL, 2011**

/s/ Shelley C. Chapman
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

# Budget